**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANTHONY B. HARRELL,** | : | **CIVIL ACTION** |
| **Petitioner** | : | |
| | : | |
| **v.** | : | **NO. 06-4616** |
| | : | |
| **GERALD ROZUM, et al.,** | : | |
| **Respondents** | : | |

**REPORT AND RECOMMENDATION**

**TIMOTHY R. RICE** **June 11, 2007**
**U.S. MAGISTRATE JUDGE**

Petitioner Anthony B. Harrell, who is incarcerated at the State Correctional Institute in Somerset, Pennsylvania, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Based on a careful review, I recommend Harrell's petition be granted in part, denied in part, and dismissed in part. I recommend a 180-day stay of execution on Harrell's writ as to his conviction under the Pennsylvania Corrupt Organizations Act ("Pa. COA"), 18 Pa. C.S. § 911, to permit the Commonwealth of Pennsylvania to vacate the conviction and re-sentence Harrell accordingly. As to Harrell's other claims, I recommend his petition be denied as to those claims lacking in merit, and dismissed as to those claims that are procedurally defaulted or non-cognizable.

PROCEDURAL HISTORY

On January 4, 1984, after conspiring to rob Perry Dedmon, a drug distributor, Harrell, Johnny Alexander, and Barry Jones followed Dedmon into his apartment and forced him and Gwendolyn Waters, Dedmon's common law wife who was in the apartment, to lie on the floor while they searched for drugs. See Commonwealth v. Harrell, 579 A.2d 417 (Pa. Super. 1990)

(Table) (copy of an unpublished opinion attached as Ex. B of Respondent's Answer). After finding drugs, money, and other valuables, the men shot both Waters and Dedmon in the head. Id. Dedmon died, but Waters survived. Id.

On November 2, 1988, following a jury trial, Harrell was convicted of first degree murder, aggravated assault, criminal conspiracy, robbery, and corrupt organization.[1] Harrell was sentenced to serve life imprisonment for murder, a consecutive 10 to 20 years for robbery, a consecutive five to 10 years for aggravated assault, and two concurrent terms of five to 10 years for corrupt organization and criminal conspiracy. (Ex. B of Respondent's Answer). On May 11, 1990, the Superior Court affirmed the judgment of sentence. Harrell, 579 A.2d 417. On March 12, 1991, the Supreme Court of Pennsylvania denied allocatur. Commonwealth v. Harrell, 590 A.2d 756 (Pa. 1991) (Table).

On October 23, 1995, Harrell sought collateral relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. § 9541, et seq. He claimed his conviction was the result of police misconduct. (Ex. B of Respondent's Answer, PCRA Petition). Three witnesses who had testified against him were former police officers Thomas Ryan, Steven Brown, and John Baird, all of whom had pled guilty to various violations of federal law while assigned to Philadelphia's 39th Police District. Harrell claimed these officers had coerced a principal prosecution witness, Samuel Boykin, into giving false statements against Harrell. (Id.). Harrell also requested an evidentiary hearing on his petition. (Id.). Evidentiary hearings, at

[1] Harrell, Alexander, and Jones were tried together. (Opinion, Mar. 10, 2000, Respondent's Br. Ex. M). Alexander was convicted of first degree murder, robbery, aggravated assault, and conspiracy. (Id.). Jones was convicted of second degree murder, robbery, and conspiracy. (Id.).

which Boykin testified, were subsequently held on July 19-20, 1999 and October 28-29, 1999. (Ex. M of Respondents' Answer). On March 10, 2000, Harrell's PCRA petition was denied.[2] (Id.).

On May 4, 2000, Harrell filed a timely notice of appeal. (Appeal Docket Sheet, Ex. M of Respondents' Answer). On March 30, 2001, however, the appeal was "dismissed for failure to file brief." (Id.). On April 26, 2001, Harrell filed an application to reinstate appeal, which was granted on June 20, 2001. (Id.). On October 29, 2001, Harrell filed his first extension of time to file brief, which was granted. (Id.). Through at least February 3, 2003, Harrell filed, and was granted, numerous requests for extensions of time to file his appellate brief. (Id.). On June 20, 2001, the Superior Court of Pennsylvania ordered a remand to the lower court for 45 days so Harrell could request transcripts. (Id.). On September 20, 2001, the docket sheet notes, "trial court record received." (Id.). On March 4, 2005, the Superior Court of Pennsylvania ordered Harrell to file his brief within 60 days. Commonwealth v. Harrell, No. 1204 EDA 2000. In that order, the court noted the record had been twice remanded so Harrell could be provided with court documents and that since November 19, 2002, Harrell's briefing schedule had been extended at his request "no less than eleven times." Id. Finally, on May 10, 2005, Harrell filed

[2] While serving his sentence at the State Correctional Institute in Graterford, Pennsylvania, Harrell participated in a credit card fraud operation whereby merchandise was purchased fraudulently and later exchanged for cash. Prior to the determination of Harrell's PCRA petition, on July 19, 1996, Harrell was federally indicted for conspiracy to engage in mail fraud, wire fraud, and credit card fraud; wire fraud; mail fraud; unauthorized use of credit cards; and unlawful possession of a firearm. (Indictment, Respondent's Ex. D). On December 12, 1997, judgment was entered against Harrell on all counts, and Harrell was sentenced to an eight-year term of imprisonment, to run consecutive to the undischarged sentence being served in the Commonwealth of Pennsylvania. United States v. Harrell, 2:96-cr-00264 (Dkt # 608, 609), aff'd, 172 F.3d 860 (3d Cir. 1998) (Table).

his Superior Court brief. (Ex. M of Respondents' Answer). On October 21, 2005, the Superior Court of Pennsylvania affirmed the denial of PCRA relief. Commonwealth v. Harrell, No. 1204 EDA 2000 (Pa. Super. 2005). Harrell did not seek review in the Supreme Court of Pennsylvania. On October 17, 2006, Harrell filed the petition for writ of habeas corpus in this court.

Harrell claims: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; (3) prosecutorial misconduct for failing to disclose evidence that several of the police officers who testified against Harrell were corrupt; (4) prosecutorial misconduct for failing to provide Harrell with notice of the indictment and improperly seeking Harrell's conviction under the Pennsylvania Corrupt Organizations Act; (5) denial of due process rights because he was deprived of trial transcripts; and (6) denial of due process because of his unlawful arrest, trial, and conviction pursuant to evidence obtained by "corrupt government sources." (Petition, 9-10).

## DISCUSSION

### A. The Pennsylvania Corrupt Organizations Act

As part of his first, second, and fourth claims, Harrell contends his trial and appellate counsel were ineffective for appearing unfamiliar with the Pennsylvania Corrupt Organizations Act ("Pa. C.O.A."), 18 Pa. C.S. § 911, and that the prosecution engaged in misconduct for seeking his conviction under the Pa. C.O.A.[3] Harrell does not challenge his conviction under the Pa. C.O.A.; however, respondents acknowledge that Harrell's Pa. C.O.A. conviction is invalid under Commonwealth v. Besch, 674 A.2d 655 (Pa. 1996), (Resp. Answer, 34), and suggest the case should be returned to state court for it to vacate the Pa. C.O.A. conviction and to re-sentence

[3] These claims are discussed, infra, in footnote 11.

Harrell.[4]  Respondents also do not assert Harrell's claim is time-barred.[5]

According to the Pennsylvania Supreme Court's interpretation of the Pa. C.O.A. in Besch, Harrell's conviction and continued incarceration under the Pa. C.O.A. is a violation of the Due Process Clause.  I therefore recommend Harrell's petition be granted as to this matter.

In Besch, decided in 1996, well after Harrell's conviction became final in 1991,[6] the Pennsylvania Supreme Court interpreted the Pa. C.O.A. for the first time and held that the express intent of Pa. C.O.A. was to "prevent infiltration of legitimate businesses by organized crime." Besch, 674 A.2d at 660.[7]  The Pa. C.O.A. therefore did not apply to involvement in

---

[4] See Commonwealth v. Goldhammer, 517 A.2d 1280 (Pa. 1986) (permitting remand for re-sentencing where a later appellate court disposition altered the sentencing scheme).

[5] Harrell's claim is not time-barred because equitable tolling excuses the application of the limitations period of § 2244(d)(1).  See McKeever v. Warden SCI Graterford, Civ. A. No. 04-3567 (E.D. Pa.) (Report and Recommendation of Nov. 30, 2004 (Hart, M.J.), adopted by Memorandum and Order of March 23, 2005 (Diamond, J.)), aff'd, 2007 WL 1365363 (3d Cir. May 10, 2007); Stocker v. Warden SCI-Graterford, 2004 WL 603400 (E.D. Pa. Mar. 25, 2004) (Giles, J.).  Equitable tolling is appropriate when the principle of equity would make the rigid application of a limitation period unfair.  Fahy v. Horn, 240 F.3d 293, 244 (3d Cir. 2001).

[6] Harrell's conviction became "final" on June 10, 1991, 90 days after March 12, 1991, when his right to seek certiorari in the Supreme Court of the United States expired.  Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000) (judgment becomes final at the conclusion of direct review or the expiration of time for seeking such review, including the 90-day time limit for filing a writ of certiorari in the Supreme Court).

[7] Within two weeks of the Besch decision, the Pennsylvania legislature amended Pa. COA and stated that it had never intended to exempt illegal or illegitimate businesses from the reach of Pa. COA.  See Commonwealth v. Shaffer, 734 A.2d 840 (Pa. 1999).  In Shaffer, however, the Pennsylvania Supreme Court held the legislature lacked the authority to overrule the court's decision in Besch.  Shaffer, 734 A.2d at 843.  The court reasoned that the legislature's amendment applied only prospectively, or as of the time it was passed.  Id. at 844.  The Besch court's interpretation of Pa. COA, however, became a part of the legislation from the date of its enactment.  Id.  Similarly, in Kendrick v. District Attorney, 916 A.2d 529, 538 (Pa. 2007), the Pennsylvania Supreme Court stated that Besch's holding did not set forth a new rule, but "merely explicated the meaning and scope of the term from the Pa. COA's original enactment."

wholly illegitimate operations.  Id.  The Pennsylvania Supreme Court further explicated in Commonwealth v. Shaffer, 734 A.2d 840, 843 (Pa. 1999), and Kendrick v. District Attorney, 916 A.2d 529, 538 (Pa. 2007), that Besch's holding did not set forth a new rule, but merely set forth the meaning and scope of the Pa. C.O.A. from the time of its original enactment in 1973 until its amendment in 1996.

Harrell's crime was committed in 1984.  Pursuant to the Pennsylvania Supreme Court's decisions in Besch, Shaffer, and Kendrick, the Pa. C.O.A. in 1984 applied only to legitimate businesses infiltrated by organized crime and not to wholly illegitimate operations.  Respondents submit, and I agree, that Harrell's "drug-and-murder gang" was a wholly illegitimate operation that did not satisfy the elements of a Pa. C.O.A crime as the statute stood at the time. (Resp. Answer, 34).  Therefore, respondents concede, Harrell's conviction is invalid. (Id.).

In a similar case, in Fiore v. White, 531 U.S. 225, 228 (2001), the petitioner Fiore was convicted for violating a Pennsylvania statute prohibiting the operation of a hazardous waste facility without a permit.  After his conviction became final, the Pennsylvania Supreme Court interpreted the statute for the first time and made clear that Fiore's conduct was not within the statute's scope.  Id. at 226.  The Pennsylvania Supreme Court also specified that the interpretation did not involve a question of retroactivity because it was merely a clarification of the law of Pennsylvania at the time of Fiore's conviction.  Id. at 226, 228.  The United States Supreme Court consequently found that Fiore's conviction and continued incarceration under the statute was a violation of due process because the statute, as properly interpreted, did not prohibit Fiore's conduct.  Id. at 228.

Here, the Pa. C.O.A., as properly interpreted, did not prohibit Harrell's conduct. Harrell's wholly illegitimate operation was not within the scope of Pa. C.O.A as properly interpreted. Thus, Harrell's conviction and continued incarceration under Pa. C.O.A. is a violation of due process and Harrell's petition should be granted[8] to allow the Commonwealth of Pennsylvania to vacate Harrell's conviction related to the Pa. C.O.A. and re-sentence him accordingly. See also Kendrick v. District Attorney, No. 02-3158 (3d Cir. June 7, 2007); McKeever, Civ. A. No. 04-3567; Stocker, 2004 WL 603400.

B. Ineffective Assistance of Trial Counsel for Failure to Call Necessary Defense Witnesses

Harrell claims his trial counsel was ineffective for failing to call necessary defense witnesses. Harrell does not elaborate and does not provide any factual support for this claim. Without adequate factual support, his vague and conclusory claim does not entitle Harrell to relief. A court cannot grant relief based on vague and conclusory allegations; rather, the petitioner must set forth sufficient facts. Zettlemeyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991) (citing Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir. 1987)).

Assuming, however, that Harrell's claim is the same as that exhausted on direct appeal in the Pennsylvania state courts[9] and the factual claims made in his appellate brief filed December 26, 1989, (Ex. A of Respondents' Answer), are applicable here, his claim still fails. Harrell has not shown how the state court's decision on May 11, 1990, Harrell, 579 A.2d 417, was an

---

[8] A federal court may grant habeas relief to a state prisoner "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

[9] Respondents also suggest this claim may be the same claim Harrell exhausted on direct appeal as claim four, concerning trial counsel's failure to call three witnesses to rebut Boykin's testimony. (Respondents' Answer, 35).

objectively unreasonable application of clearly established federal law. § 2254(d)(1).

Clearly established federal law governing ineffectiveness claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). See Bell v. Cone 535 U.S. 685, 698 (2002). In Strickland, the Supreme Court established a two-pronged test for ineffectiveness claims. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious he was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing the errors were so serious as to deprive the defendant of a fair trial. Strickland, 466 U.S. at 687; see generally Outten v. Kearney, 464 F.3d 401, 413-14 (3d Cir. 2006); Thomas v. Varner, 428 F.3d 491, 499 (3d Cir. 2005). "Unless a defendant makes both showings, it cannot be said that the conviction or sentence resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687.

Counsel's effectiveness is measured objectively considering all the circumstances. Strickland, 466 U.S. at 687-88. To establish counsel's performance was deficient, Harrell must show counsel's representation fell below an objective standard of reasonableness. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689; see Douglas v. Cathel, 456 F.3d 403, 420 (3d Cir. 2006). Counsel's conduct is presumed to fall within the wide range of reasonable professional assistance. Strickland, 456 U.S. at 689. The strategic decisions of counsel, made after thorough investigation of law and facts, are virtually unchallengeable. Id. at 690.

In evaluating counsel's performance, I must be "highly deferential" and "indulge a strong presumption" that counsel's challenged actions might be considered sound strategy under the circumstances. See Thomas, 428 F.3d at 499 n.6 (citing Buehl v. Vaughn, 166 F.3d 163, 169 (3d Cir. 1999)). The relevant inquiry is not whether Harrell's counsel was prudent, appropriate, or perfect. Rather, the focus is simply to ensure Harrell received a fair trial. See Marshall v. Hendricks, 307 F.3d 36, 91 (3d Cir. 2002).

Section 2254(d) requires that I determine whether the state courts' "adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). I must presume that the state court's findings of fact are correct and petitioner must rebut that presumption of correctness by clear and convincing evidence. § 2254(e)(1).

A state court ruling is "contrary to" clearly established Supreme Court precedent for the purposes of § 2254(d)(1) "if the state court applies a rule that contradicts the governing law" set forth in Supreme Court cases, or "if the state court confronts a set of facts that are materially indistinguishable from" a Supreme Court decision and nevertheless arrives at a result different from its precedent. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). A state court decision constitutes an "unreasonable application" of Supreme Court precedent if it identifies the correct governing legal rule from Supreme Court cases, but "unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. When making the "unreasonable application" inquiry, I must determine "whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409; see also Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir. 1999) (en banc) (determining whether the state court decision, evaluated

objectively and on the merits, resulted in an outcome that cannot reasonably be justified under Supreme Court precedent).  A showing of clear error is not sufficient.  Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); see also Douglas, 456 F.3d at 416 (grant of writ inappropriate where state determination was not objectively unreasonable, even where reasonable jurists may disagree about the correct disposition of the underlying claim).  Decisions of lower federal courts may be helpful in ascertaining the reasonableness of state courts' application of clearly established Supreme Court precedent.  Fischetti v. Johnson, 384 F.3d 140, 149 (3d Cir. 2004).  I may not grant habeas relief merely because the state court applied federal law erroneously or incorrectly.  Thomas, 428 F.3d at 497.  Review of ineffectiveness claims is "doubly deferential when it is conducted through the lens of federal habeas."  Yarborough v. Gentry, 540 U.S. 1, 6 (2003).

In adjudicating Harrell's claim of ineffective assistance of counsel for failure to call three necessary defense witnesses, the Superior Court stated in its May 11, 1990 decision:

> The record reveals that it was [Harrell's] decision not to call other witnesses.  The trial judge asked [Harrell] whether he wanted to call any other witnesses and he answered the court in the negative.  Therefore, [Harrell's] ineffectiveness claim is without arguable merit because he abandoned this issue at trial.

Harrell, 579 A.2d 417.

Counsel cannot be deemed ineffective for failing to call witnesses when it was Harrell's decision not to call further witnesses.  Examined under Strickland, the Superior Court's decision was not objectively unreasonable.  Counsel's performance could not have been deficient or prejudicial to the defense if it was due to Harrell's own decision that no additional witnesses were called.  Harrell's claim must fail.

C.     Deprivation of Trial Transcripts

Harrell claims his due process rights were violated when he was deprived of his right of access to the courts. He claims this occurred when the state courts failed to provide him with trial transcripts while his PCRA appeal was pending. This is not a cognizable claim for the purposes of federal habeas review.

Habeas proceedings are not the appropriate forum for pursuing claims of error at the PCRA proceeding. Lambert v. Blackwell, 387 F.3d 210, 247 (3d Cir. 2004). Alleged errors in collateral proceedings are not a proper basis for habeas relief from the original conviction. "It is the original trial that is the 'main event' for habeas purposes." Id. "The federal courts are authorized to provide collateral relief where a petitioner is in state custody or under a federal sentence imposed in violation of the Constitution or the laws or treaties of the United States. 28 U.S.C. §§ 2254, 2255. Thus, the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation." Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998).

In any event, Harrell's claim is meritless. His case was twice remanded by the Pennsylvania Superior Court for the sole purpose of allowing him the opportunity to order the transcripts and he was granted 11 extensions to file a brief because he complained he did not have the transcripts. That he does not have the transcripts now is not a failure on the part of the court.

Moreover, I cannot find, and Harrell does not show, how he was prejudiced by the lack of trial transcripts on PCRA appeal. In his PCRA petition, Harrell argued issues involving the

corruption of former police officers Ryan, Brown, and Baird, and their coercion of Boykin to testify falsely. (Ex. C of Respondents' Answer). In his memorandum of law in support of the PCRA petition, Harrell discussed events that occurred at his trial. (Id.). It was only on appeal, however, that Harrell complained of the absence of trial transcripts. (Ex. M of Respondents' Answer). In his memorandum of law in support of the PCRA petition, Harrell appears well aware of the issues and the facts in support of them. I cannot see how he was prejudiced by the absence of transcripts on appeal of those issues in the Pennsylvania Superior Court.

D. Evidence Flowing from "Corrupt Government Sources"

Harrell's next claim is that his conviction was unlawfully obtained by the use of evidence flowing from corrupt government sources, namely, that former police officers Ryan, Brown, and Baird, all of whom pled guilty to federal corruption charges, coerced prosecution witness Boykin into testifying falsely against Harrell.[10] Harrell properly raised this claim in his PCRA petition, and evidentiary hearings were held at which Boykin testified. In its opinion denying habeas relief on March 10, 2000, the PCRA court found Boykin's recantation testimony was incredible and found there was no showing that the outcome of Harrell's trial would have been different had Boykin testified as he did at the PCRA hearings. (Ex. M of Respondents' Answer). The Pennsylvania Superior Court, on appeal, examined the history of Boykin's testimony:

> At the time of trial, Samuel Boykin initially was unresponsive to various questions involving this incident. However, Boykin subsequently admitted that this silence was based on threats he had received concerning his sister's safety. Upon being assured of her protection, Boykin testified to overhearing various remarks regarding . . . the murder of Dedmon. At the PCRA hearings concerning his recantation, Boykin claimed that he made the statements on the behest of the

[10] The facts of the corruption case in which former police officers Ryan, Brown, and Baird were defendants can be found in United States v. Baird, 109 F.3d 856 (3d Cir. 1997).

      detectives in this case and in exchange received drugs, money and conjugal visits from his girlfriend.

Commonwealth v. Alexander, No. 984 EDA 2000 (Pa. Super. 2000), reasoning adopted by Commonwealth v. Harrell, No. 1204 EDA 2000 (Pa. Super. 2005) (Attached as Ex. N of Respondents' Answer). Citing Commonwealth v. Henry, 706 A.2d 313, 321 (1997), the Pennsylvania Superior Court stated that, because recantation testimony involves an admission of perjury, it is extremely unreliable. Alexander, No. 984 EDA 2000. In addition, mindful that an "appellate court may not disturb the trial court's determination absent a clear abuse of discretion," the court found that the PCRA court had not abused its discretion in its credibility determination. Id.

      Factual determinations by state courts are presumed correct unless the petitioner rebuts "the presumption of correctness by clear and convincing evidence." 29 U.S.C. § 2254(e)(1). In addition, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); see also Lambert v. Blackwell, 387 F.3d 210, 234-35 (3d Cir. 2004). A federal court, however, "can disagree with a state court's credibility determination and, when guided by the Anti-Terrorism and Effective Death Penalty Act, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence." Miller-El, 537 U.S. at 340.

      The PCRA court found that Boykin's recantation testimony was without credibility.

Harrell has not presented any evidence to rebut the presumption that the credibility determination made by the PCRA is correct. Moreover, based on a review of Boykin's recantation testimony, I find that the state court's credibility determination was reasonable and based on a correct factual premise. See id. Therefore, Harrell's claim that his conviction is unlawful because Boykin testified falsely against him is without merit.

E.   Procedurally Defaulted Claims

Harrell's remaining claims, contained in claims one through five of his petition, are procedurally defaulted because his federal habeas petition is his first judicial attempt to assert these claims. His claims are: (1) he was deprived of the effective assistance of trial counsel because counsel appeared unaware of hearsay testimony rules and failed to prepare adequately for trial, raise proper objections, file correct motions, and preserve issues for appeal; (2) he was deprived of the effective assistance of appellate counsel because counsel appeared unaware of hearsay testimony rules and failed to develop or perfect issues for appeal, failed to file an effective appeal to the Pennsylvania Superior Court, and failed to file an appeal to the Pennsylvania Supreme Court; (3) in violation of Brady v. Maryland, 373 U.S. 83 (1963), the prosecution wrongfully failed to disclose at trial that former police officers Ryan, Brown, and Baird were corrupt and testified falsely, and coerced Boykin into testifying falsely as well; and (4) the prosecution engaged in misconduct when he was not provided prior notice of the indictment.[11]  (Petition, 9).

---

[11] Harrell's claims of ineffective assistance of counsel and prosecutorial misconduct include underlying challenges to his conviction under the Pa. C.O.A. Specifically, he claims that both trial and appellate counsel were ineffective for failing to investigate adequately the Pa. C.O.A., and the prosecution engaged in misconduct when it unlawfully sought his conviction

Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his available remedies in state court. 28 U.S.C. § 2254(b); O'Sullivan v. Boerkel, 526 U.S. 838, 839 (1999); Picard v. Connor, 404 U.S. 270, 275 (1971); Slutzker v. Johnson, 393 F.3d 373, 379 (3d Cir. 2004). A petitioner "shall not be deemed to have exhausted the remedies available . . . if he has the right under the law of the state to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). However, "if [a] petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is procedural default for the purpose of federal habeas . . . ." Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999). The purpose of the procedural default rule is to prevent habeas petitioners from avoiding the exhaustion doctrine by defaulting their federal claims in state court. Coleman, 501 U.S. at 732. Although the issue of procedural default is best addressed by the state courts, a federal court may dismiss a petition as procedurally barred if state law would unambiguously deem it defaulted. Carter v. Vaughn, 62 F.3d 591, 595 (3d Cir. 1995).

Where claims are not properly presented to the state courts, and state procedures bar further review, the claim is exhausted and procedurally defaulted. Woodford v. Ngo, 126 S.Ct.

---

under the Pa. C.O.A. These claims are without merit because, as I discussed in part A, the Pennsylvania Supreme Court's new interpretation, or, clarification, of Pa. C.O.A. did not occur until 1996, well after Harrell's conviction became final. Prior to Besch, the Pennsylvania state courts upheld convictions under the Pa. C.O.A. based on wholly illegal conduct. See Commonwealth v. Wetton, 641 A.2d 574, 579 n.5 (Pa. 1994); Commonwealth v. Yacoubian, 489 A.2d 228, 231 (Pa. Super. 1985). Any claim that counsel was ineffective or the prosecution engaged in misconduct for applying prevailing law is without merit.

2378, 2386-87 (2006). Harrell's claim is procedurally defaulted under 42 Pa.C.S. § 9544(b) (issue is waived if petitioner failed to raise it and the issue could have been raised before trial, at trial, on appeal, in habeas corpus proceeding, or in prior proceeding under PCRA); see also O'Sullivan, 256 U.S. at 848-49 (failure to raise issue in discretionary appeal to state supreme court constituted a procedural default for habeas purposes); Sistrunk v. Vaughn, 96 F.3d at 671 n.4 ("the rules [of Pennsylvania's appellate procedure] dictate that an issue raised at the trial level but not preserved on appeal will not be considered by any subsequent appellate court"); Commonwealth v. D'Collanfield, 805 A.2d 1244, 1245 (Pa. Super. 2002) (issue not preserved on appeal waived). Moreover, Harrell is now well beyond his one-year limitation period for filing additional PCRA petitions. 42 Pa.C.S. § 9545(b)(1) (petition, even second or subsequent, must be filed within one year of the time conviction becomes final).

Harrell had the opportunity to assert his claims in the proper state venues when he filed his direct appeal and his PCRA petition. He did not avail himself of these opportunities. Harrell does not offer a cause for his procedural default and does not explain his failure to raise the claims previously or his failure to pursue the claims through the full appeals process. See Coleman, 510 U.S. at 750.

He also does not show, and I cannot find, that any prejudice occurred nor that a miscarriage of justice would result from upholding the default. Id. Harrell may obtain federal habeas review of procedurally defaulted claims only if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claim would result in a fundamental miscarriage of justice." Id. Harrell must establish "cause" for his noncompliance with state procedures and "actual prejudice" resulting

from the alleged constitutional violation.  Smith v. Murray, 477 U.S. 527, 533 (1986); see also Murray v. Carrier, 477 U.S. 478, 485 (1986).  This requirement, like the exhaustion doctrine, is grounded in the need for finality and comity, i.e., ensuring that state courts have an adequate opportunity to review a case on the merits.  Smith v. Murray, 477 U.S. at 533.

Harrell has provided no explanation for his failure to follow the appropriate state appellate procedures and therefore, cannot demonstrate cause for his procedural default.  My review of the record suggest no facts to justify this default.  Since he cannot establish cause for his failure to raise his federal claim in state court, I recommend that his claim be denied with prejudice.

    1.    Non-Cognizable Claims

Moreover, Harrell's first two claims regarding ineffective assistance of trial and appellate counsel are not cognizable.  Normally, pro se filings are subject to less stringent pleading requirements, Estelle v. Gamble, 429 U.S. 97, 106 (1976), and should be liberally construed with a measure of tolerance, see Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998).  This, however, does not relieve a petitioner from presenting more than conclusory allegations.  The rules governing habeas corpus petitions demand more than notice pleading.  Mayle v. Felix, 125 S. Ct. 2562, 2570 (2005) (Habeas Corpus Rule 2(c) "provides that the petition must 'specify all the grounds for relief available to the petitioner' and 'state the facts supporting each ground.'"); see McFarland v. Scott, 512 U.S. 849, 856 (1994) ("Habeas corpus petitions must meet heightened pleading requirements.").  Moreover, a court cannot grant relief based on vague and conclusory allegations; rather, the petitioner must set forth sufficient facts.  Zettlemeyer, 923 F.2d at 298.

Harrell's general claims are not cognizable because he does not provide sufficient facts in support. He first claims trial counsel was ineffective for appearing unaware of hearsay testimony rules and failing to prepare adequately for trial, raise proper objections, file correct motions, and preserve issues for appeal. (Petition, 9). However, he does not identify which hearsay testimony rules counsel did not appear to know, in what way trial preparation was inadequate, which objections should have raised, which motions should have been filed, or which issues should have been preserved for appeal. Nor does Harrell explain how he was prejudiced by the allegedly deficient performance of trial counsel.

Harrell's second claim that he was deprived of the effective assistance of appellate counsel because counsel appeared unaware of hearsay testimony rules and failed to develop or perfect issues for appeal, failed to file an effective appeal to the Pennsylvania Superior Court, and failed to file an appeal to the Pennsylvania Supreme Court, is also insufficiently supported by facts. (Petition, 9). Again, Harrell does not identify which hearsay testimony rules counsel appeared not to know, which issues counsel failed to develop or perfect for appeal, and how counsel failed to file an effective appeal. Harrell fails to demonstrate how appellate counsel's performance was deficient or how he was prejudiced by these failings of counsel. Moreover, he is incorrect that appellate counsel failed to file an appeal to the Pennsylvania Supreme Court. A petition for allowance of appeal to the Supreme Court of Pennsylvania was filed on August 20, 1990 and denied on March 12, 1991. Commonwealth v. Harrell, 590 A.2d 756 (Pa. 1991) (Table). (Court of Common Pleas Docket Sheet, Ex. N of Respondents' Answer).

The pleading rules, even when relaxed for a pro se petition, do not allow for such speculation. Harrell's vague and conclusory claims, without adequate factual support, do not entitle Harrell to relief.

2. No Brady Violation

In the alternative, Harrell's assertion of a Brady violation is without merit. Harrell contends that in violation of Brady, the prosecution wrongfully failed to disclose at trial that former police officers Ryan, Brown, and Baird were corrupt and testified falsely, and coerced Boykins into testifying falsely as well.

In Brady, the United States Supreme Court held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. To demonstrate a Brady violation, Harrell must show the prosecution had constructive possession of the evidence, i.e., the prosecution knew or should have known of the evidence. United States v. Risha, 445 F.3d 298, 303 (3d Cir. 2006).

Here, any evidence of corruption was not known by the Commonwealth of Pennsylvania until well after Harrell's trial. Ryan, Brown, and Baird were not indicted until February 28, 1995, and judgment was entered against them on April 19, 1996. (Docket 2:95-cr-00092). There is no evidence the prosecution could have known or should have known of the officers' corruption before Harrell's 1988 prosecution.

In addition, Harrell cannot show the prosecution knew or should have known Ryan, Brown, and Baird coerced Boykin to testify falsely if Boykin did not in fact testify falsely. The

PCRA court found on March 10, 2000, that Boykin's recantation testimony was entirely without credibility, i.e., Boykin's new testimony he had been coerced into testifying against Harrell at trial was without credibility. (Ex. M of Respondent's Answer). Evidence that Ryan, Brown, or Baird coerced Boykin to testify falsely could not have been within the constructive possession of the prosecution.

Therefore, there is no Brady violation.

Accordingly, I make the following:

**RECOMMENDATION**

AND NOW, this 11th of June, 2007, it is respectfully recommended that the petition for a writ of habeas corpus be: (1) GRANTED in part as to Harrell's conviction under the Pa. C.O.A. with execution stayed for 180 days to permit the Commonwealth of Pennsylvania to vacate the conviction and re-sentence Harrell accordingly; (2) DENIED in part with prejudice as to his meritless claims; and (3) DISMISSED in part with prejudice as to his claims that are procedurally defaulted. It is further RECOMMENDED that there is no probable cause to issue a certificate of appealability.

BY THE COURT:

\s\ TIMOTHY R. RICE
TIMOTHY R. RICE
U.S. MAGISTRATE JUDGE